IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GLENN SMITH

      Plaintiff,

v.                               CASE NO. 4:12-cv-590-RH-GRJ

MICHAEL CREWS,
SECRETARY, DEP'T OF CORRECTIONS,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 42) and Defendant's Motion for Summary Judgment. (Doc. 44.)  Plaintiff has filed a Response to Defendant's Motion for Summary Judgment (Doc. 46) and therefore the motions are ripe for review.[1]  For the reasons discussed below, Defendant's Motion for Summary Judgment should be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED**.

### I.  ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that on June 23, 2012, his tooth broke during a meal.  On July 6, 2012, he accessed dental services at Hardee C.I. and was seen by "Senior Dentist Dr. Kubik."  Plaintiff alleges that Dr. Kubik told him that although a crown could repair his tooth (#18), extraction of the tooth was the only option because Plaintiff was

---

[1] Although the Defendant did not file a response to Plaintiff's Motion for Summary Judgment, Defendant's Motion for Summary Judgment addresses the same issue and therefore will also be considered a response to Plaintiff's motion.

incarcerated.  Plaintiff refused the extraction and filed this suit approximately four months after his dentist visit.  Plaintiff did not experience any pain as a result of the broken tooth or refusal to have the tooth extracted.  (Doc. 1, pp. 12, 18, 23.)  Plaintiff named the Secretary of the Department of Corrections[2] as the sole Defendant, alleging that the DOC's policy of not providing a crown when a crown is the only option to avoid extraction violates the Eighth Amendment.  Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, and punitive damages; and costs of litigation.  (Doc. 1.) Approximately one year after initiating this suit, Plaintiff actually received treatment for his tooth after evaluation by another FDOC dentist–in the form of a filling on November 13, 2013–and Plaintiff acknowledges in his motion for summary judgment that he is only seeking prospective injunctive relief.  (Doc. 42, pp. 6-7.)

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences."

---

[2] Plaintiff's individual capacity claim against former FDOC Secretary Kenneth Tucker was previously dismissed.  (Doc. 28.)

*Horn v. United Parcel Services, Inc.* 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

The Eleventh Circuit has noted that

> [i]t is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his allegations sufficient to raise a genuine issue of material fact regarding each element of his claim.  As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi Of Fla., Inc. v. Lee County Port Auth.,* 301 F. App'x 881, 885 (11th Cir. 2008). Where the nonmoving party bears the burden of proof, he must offer more than a mere

"scintilla of evidence" in support of his position.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

### III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 44)

Defendant argues that because Plaintiff received a filling during the pendency of this lawsuit, this case is now moot and Plaintiff lacks standing.  Defendant also contends that Plaintiff failed to exhaust his available administrative remedies because he did not file a petition to initiate rulemaking to alter the FDOC official rule on crowns (Florida Administrative Code 22-402.101) prior to filing this suit.  Finally, Defendant argues that Plaintiff has failed to state a claim for an Eighth Amendment violation because his chipped tooth was not a "serious medical need" and even if it were, Plaintiff has failed to establish that any FDOC medical professional was deliberately indifferent to such a need.  (Doc. 44.)

In support of his Motion for Summary Judgment, Defendant has submitted three exhibits.  Exhibit A is an inmate population information detail for Plaintiff.  (Doc. 44, Exh. A.)  Exhibit B is the declaration of Justine Benton, an Administrative Assistant in the FDOC General Counsel's Office, who attests that Plaintiff did not file any petitions to initiate rulemaking regarding dental services prior to 2013.  (*Id.* at Exh. B.)  Exhibit C is a one-page dental treatment record with notations on January 22, 2013, June 18, 2013, June 19, 2013, August 14, 2013, October 31, 2013, and November 13, 2013. The notes evidence that dentist W.J Fox examined Plaintiff on August 14, 2013 and recommended a filling during Plaintiff's next visit.  On November 13, 2013, Dr. Fox gave Plaintiff a composite resin filling in tooth #18.   (*Id.* at Exh C.)

### IV.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 42)
### and RESPONSE (Doc. 46)

Plaintiff has filed a Motion for Summary Judgment (Doc. 42) and a response in

opposition to Defendant's Motion for Summary Judgment.  (Doc. 46.)   Plaintiff argues

that there is no genuine issue of material fact remaining and that he has established

that the FDOC policy to deny crowns in cases where it is the only restorative measure

to save a tooth from extraction.  (Doc. 42.)  In support of his Motion for Summary

Judgment, Plaintiff offers four exhibits.  Exhibit A is Defendant Crew's Responses to

Plaintiff's Request for Admissions, wherein he admits the following statement:

> That Florida Department of Correction (FDC) Fla. Admin. Code. R. 33-402-
> 101(7)(a)3 ("Crowns ... are not to be done except in unusual circumstances
> and only when adequate restoration cannot be placed") and HSB 15.04.13
> Supplement C J (crowns are not to be done except for unusual
> circumstances and only when an adequate restoration cannot be placed.  (1)
> Traumatic injury to the tooth while performing institutional work with a
> verifiable incident report. (2) Traumatic injury to the tooth due to use of force
> with a verifiable incident report. (3) Replacement of current incarceration
> single-unit crowns due to recurrent decay, etc. The bill will be charged to the
> inmate's bank account.") are FDC policies which deny repair of a broken or
> decayed tooth with a crown (except in regard to "[r]emplacement, due to
> recurrent decay, etc."] when a crown would save a tooth from extraction
> when no other adequate restoration can be place.

(Doc.42, Exh. A, p. 1.)

Plaintiff has also provided a transcript of his deposition, in which he testified in

relevant part, that when he visited the dentist on July 6, 2012, the dentist asked him if

he was ready to have his tooth pulled.  (*Id.* at Exh. B,  p. 26.)  Plaintiff asked if the tooth

was "crownable," and the dentist told him yes, it was "crownable" but that as long as

Plaintiff was incarcerated, he could not get a crown.  (*Id.*)  The dentist told him that his

only option was to pull the tooth.  (*Id.* at p. 28.)  At a subsequent exam with a different

dentist in April 2013, a dentist told him that a crown would not be the best option because he was not experiencing pain and "the only thing . . . that's really bothering [Plaintiff] is that the fact that [he] can feel the tooth's broken." (*Id.* at p. 30.) The dentist told Plaintiff that a crown might actually cause further problems such as pain. (*Id.* at p. 32.) Plaintiff testified that he did not believe the dentist. (*Id.* at p. 33.) Plaintiff admitted that his broken tooth did not cause him any pain but it bothered him knowing that there a problem and that his tooth would eventually decay further. (*Id.* at p. 42.) Plaintiff reiterated that it was his position that it is unconstitutional for the FDOC not to provide a crown on a tooth that is able to be crowned. (*Id.* at p. 43.)

In Exhibit C to his Motion for Summary Judgment, Plaintiff submits four affidavits from FDOC inmates.   Inmate Robert A. Coombs stated under penalty of perjury that while at Hardee C.I., the cap on his molar cracked and he requested a new cap from the dentist.  The dentist told him that the FDOC does not replace caps even if the tooth is "good."  The dentist told him that the only option was to have the tooth extracted.  Mr. Coombs refused the extraction.  The incident occurred "recently" relative to April 18, 2013.  (*Id.* at Exh. C, p. 73.)  Inmate Roberto Cepero stated that in March 2012, he saw a dentist at Hardee C.I. because his tooth (#12) was hurting and needed treatment. The dentist told Mr. Cepero that "the institute did not do fills or crowns and that all he could do was pull it."  Mr. Cepero initially refused to have his tooth pulled but eventually agreed when the pain became unbearable.  (*Id.* at p. 74.)  Inmate Kreg Santos Perez stated that in April 2013, he had a filling done while at Hardee C.I.  A month later, he began experiencing pain in the filling and swelling in his face.  When he eventually saw the dentist, the dentist told him that his only option was to pull the tooth because he

was not equipped to install a crown after a root canal.  Due to the pain and swelling, Mr.

Perez "was left with no other choice" but to have his tooth extracted.  (*Id.* at p. 75.)

Inmate Daniel E. Holland stated that in early 2007, while at Washington C.I., he asked

to have a chip in his tooth fixed, but the dentist there told him that the only option was

extraction.  The same tooth chipped more in December 2007, and Mr. Holland had the

tooth extracted in 2008.  (*Id.* at p. 77.)

Plaintiff has submitted his own affidavit, which chronicles his history of dental

care, and asserts that based on his prior broken teeth, the standard of care is a cast

crown.  (*Id.* at p. 79.)

Finally, in Exhibit D, Plaintiff submits Defendant's Responses to Interrogatories.

Defendant answers "Yes" to Interrogatory No. 6, "Are not all FDC dentists qualified to

place crowns?" and "Yes" to Interrogatory No. 7, "Are not all FDC dentists provided with

the necessary tools and equipment to place crowns?". (*Id.* at Exh. D, p. 83.)

In his response to Defendant's Motion for Summary Judgment, Plaintiff

submitted additional exhibits.  Exhibit E contains a WebMD printout entitled "Dental

Crowns," which Plaintiff submits "as additional evidence that cast crowns are the

constitutional standard of care required."  (Doc. 46, p. 2; Exh. E.)  Exhibit E also

contains an explanation of dental implants from www.yourdentistryguide.com. (*Id.* at

Exh. E, p. 10.)  Exhibit F contains the Responses to Written Deposition Questions

Directed Toward Dr. Thomas Shields, II, D.D.S.  (*Id.* at Exh. F.)  Plaintiff specifically

cites the responses to Interrogatories 10 and 11, wherein Dr. Shields states: "If money

and time were taken out of the consideration, most people would prefer the placement

of a crown to the extraction of a tooth.  However, that is not the reality of the situation,

nor does majority preference determine what the minimum constitutional standard of care is." (*Id.* at p. 14.)  Finally, Exhibit G is a Petition to Initiate Rulemaking submitted by Plaintiff that was received by the FDOC on October 23, 2013, and denied on October 20, 2013.  (*Id.* at Exh. G.)

## V.  DISCUSSION

The only claim in this case is an official capacity claim against the Secretary of the Florida Department of Corrections.  In suits to redress constitutional torts under § 1983, the doctrine of respondeat superior does not apply and there is no vicarious liability.  In order to hold a state actor liable in an official capacity, the plaintiff must show that the deprivation of a constitutional right resulted from an express policy; a "widespread practice, that although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or the decision of a person with "final policymaking authority." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68 (1970)); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658 )(1978).

Plaintiff alleges that a prison dentist[3] was deliberately indifferent to his serious medical need when he denied him a crown and offered extraction as the only option,

---

[3] It is unclear whether the prison dentist worked directly for the FDOC or was contracted to provide dental care to inmates.  Either way, the same principles would apply, as an entity that has contracted with a state agency to perform a function traditionally within the exclusive prerogative of the state, would be subject to claims under *Monell*.  *Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997)(as the "functional equivalent" of the state, a private prison health service would be subject to claims under *Monell.*) ; *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705 (11th Cir. 1985).

and that this violation was caused by the FDOC's policy on crowns, as expressed in

Fla. Admin. Code Rule 33-402-101(7)(a)3 and FDOC Health Services Bulletin

15.04.13.[4]  To succeed in this claim, as with any § 1983 claim under *Monell*, the plaintiff

must establish that, (1) his constitutional rights were violated; (2) the [state actor]

maintained a policy or custom that constituted deliberate indifference to her

constitutional rights; and (3) the violation was caused by the policy or custom. *See City*

*of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  The

Supreme Court has stressed that issues of constitutional violation and municipal liability

are distinct: a "proper analysis requires [the separation of] two different issues when a §

1983 is asserted against a [state actor]: (1) whether plaintiff's harm was caused by a

constitutional violation; and (2) if so, whether the [state actor] is responsible for that

violation.  *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120 (1992) (internal

---

[4] Although it was reasonable to infer from Plaintiff's Complaint (Doc. 1) that he was challenging an unwritten policy or custom of the FDOC, he has since made clear in his deposition testimony and motion for summary judgment that he was not aware the FDOC had any official policy on crowns at the time he filed his Complaint.  He now asserts that the FDOC's express policy on crowns is unconstitutional.  (Docs. 42, 46.)  Even if Plaintiff was attempting to claim that FDOC liability exists based on an unwritten custom or practice, he has failed to provide sufficient evidence of any such unwritten policy.  Plaintiff has only provided his own testimony, which contains hearsay statements, and the affidavits of four inmates, which also contain hearsay.  Notwithstanding that Plaintiff may not be able to reduce this testimony to admissible form at trial, it is not enough to establish a widespread custom or policy, or that such custom or policy was "taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (quoting *Davis ex rel. Doe v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000)).  *See also Thompson v. Spears*, 336 F. Supp. 2d 1224, 1236 (S.D. Fla. 2004) (holding that a plaintiff must produce more than his own claims to prove a custom under § 1983; *Engelleiter v. Brevard County Sheriff's Dept.*, 290 F. Supp. 2d 1300, 1313-14 (M.D. Fla. 2003) (same).

citation omitted).

Thus, the Court must first turn to whether Plaintiff's rights were constitutionally violated.  In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment. To establish an Eighth Amendment violation stemming from the deprivation of medical attention, the prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need," so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.  *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991); *see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed

additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.  Along with all other aspects of health care, this remains a question of sound professional judgment.'") (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); Chance *v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ( "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

Here, viewing the facts in the light most favorable to Plaintiff, he has failed to establish that a constitutional violation occurred.  Plaintiff has failed to demonstrate that he had a serious medical need, and even assuming, *arguendo*, that his broken tooth was a serious medical need, he has failed to demonstrate the response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."  *Taylor* , 221 F.3d at 1258.

It is undisputed that a portion of Plaintiff's tooth "broke" (Doc. 1), and that while this bothered Plaintiff to the extent he was worried about future decay or deterioration of

the tooth, he did not experience any pain.  (Doc. 1, pp. 12, 18, 23.)  Plaintiff swore in his

complaint and testified much later in his deposition that he did not experience any pain

or other problems as a result of the broken tooth.  (Doc. 42, Exh. B at pp. 30-33, 42.)

Although Plaintiff contends that the first dentist told him that his only real option was

extraction since the FDOC did not provide crowns (Doc. 1; Doc. 42, Exh. B. at pp. 26-

28), a second dentist advised Plaintiff that a crown could actually worsen his condition

(Doc. 42, Exh. B. at pp. 30-33), and a third dentist advised that a filling would be

appropriate to fix the tooth (Doc. 44, Exh. C), a course of treatment that Plaintiff admits

has been satisfactory.  (Doc. 42.)

   "In certain circumstances, the need for dental care, combined with the effects of

not receiving it may give rise to a sufficiently serious medical need to show objectively a

substantial risk of serious harm."  *Farrow v. West*, 320 F.3d 1235, 1243-44 (11th Cir.

2003).  However, "not all claims regarding improper dental care will be constitutionally

cognizable.  Dental conditions, like other medical conditions, may be of varying

severity."  *Gilmore v. Hodges*, 738 F.3d 266, 276 (11th Cir. 2013) (quoting *Chance v.

Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  While dental problems can certainly

arise to the level of a serious need, there is nothing in the record that Plaintiff's

situation–a broken tooth that caused no pain, with no evidence demonstrating any

aggravation of a dental condition or harm to other teeth–gave rise to a sufficiently

serious medical need to show a substantial risk of serious harm.  Unlike cases where a

prisoner's dental condition has been deemed a serious medical need, Plaintiff's only

complaint is of "mental anguish" over having a chipped tooth.  Plaintiff admitted in his

deposition testimony that he never sought treatment for this mental anguish and that

the only evidence he suffered was his verified complaint.  (Doc. 42, Exh. B, pp. 33-34.); *see Watts v. Flowers,* 2013 WL 3816549, at *9 (E.D. Ala. 2013) (finding serious medical need where prisoner dental patient complained of serious pain over many months with minimal treatment); *Farrow*, 320 F.2d at 1244-45 (serious medical need established where inmate in need of dentures suffered from pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, and weight loss); *Smith v. Pearson*, 2011 WL 1430329, at *2, 4 (S.D. Fla. 2011) (serious medical need established where inmate had bleeding gums and loose teeth).

Even assuming *arguendo* that Plaintiff could establish he suffered from a serious medical need, he has failed to demonstrate that any prison dentist was deliberately indifferent to his medical needs.  To the contrary, the record demonstrates that three different dentists recommended three different courses of treatment, culminating in the placing of a filling in Plaintiff's tooth.   (Doc. 1; Doc. 42, Exh. B. at pp. 26-28, 30-33; Doc. 44, Exh. C.).

Plaintiff's situation is essentially a dispute "over nothing but the choice of one routine medical procedure versus another, and that is not enough to state an Eighth Amendment claim."  *McGowan v. Hulick*, 612 F.3d 636, 641 (2010) (upholding dismissal of prisoner's deliberate indifference claim against prison dentist when prisoner alleged the dentist lied in saying the prison did not allow dental fillings and then botched the prisoner's tooth extraction).  While a medical professional's actions might rise to the level of deliberate indifference in choosing an "easier and less efficacious treatment" without exercising professional treatment, mere disagreement over the course of treatment does not give rise to an Eighth Amendment claim.  *Estelle,* 429 U.S. at 104,

n. 10; *Chance,* 143 F.3d at 703.  Here, Plaintiff has failed to demonstrate a

constitutional violation, even viewing the facts in a light most favorable to him.

Because the Court concludes that there was no constitutional violation - *i.e.* there

was no deliberate indifference to Plaintiff's constitutional rights - the Court can end its

analysis here and grant summary judgment in Defendant's favor.  *See Case v. Eslinger*,

555 F.3d 1317, 1328 (11th Cir. 2009); *Cook ex rel. Estate of Tessier v. Sheriff of*

*Monroe County, Fla.*, 402 F.3d 1092, 1116-17 (11th Cir. 2005).[5]  There is no need to

analyze the constitutionality of the FDOC policy where Plaintiff has failed to establish a

constitutional violation.

## VI.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.  Plaintiff's Motion for Summary Judgment, Doc. 42, should be **DENIED**.

2.  Defendant's Motion for Summary Judgment, Doc. 44, should be **GRANTED.**

**IN CHAMBERS**  this 2nd day of June 2014.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

[5]  Because it is clear that even viewing the facts in the light most favorable to Plaintiff, he has failed to demonstrate a constitutional violation, the Court declines to address the Defendant's arguments on the issues of mootness, standing, or exhaustion.

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**